ASSOCIATION OF CLASSROOM TEACHERS OF OKLAHOMA CITY, INC., a corporation, Appellee,

v.

INDEPENDENT SCHOOL DISTRICT # 89 OF OKLAHOMA COUNTY, Oklahoma, the Board of Education of Independent School District # 89 of Oklahoma County, Oklahoma, Paul English, C. B. McCray, Floyd Donworth, Freddie Williams, Pat Potts, Armond Start and Dene Brown, as members of the 1975 Board of Education of Independent School District # 89 of Oklahoma County, Oklahoma, Appellants.

No. 49423.

Supreme Court of Oklahoma.

Nov. 15, 1977.

Lana Jeanne Tyree, William P. Bleakley, Oklahoma City, for appellee.

J. Harry Johnson, Oklahoma City, Larry L. French, Seminole, for appellants.

DAVISON, Justice:

In this case, we are asked to review an order of the District Court of Oklahoma County in which the court granted a Writ of Mandamus, ordering Independent School District # 89 of Oklahoma County, Oklahoma, to recognize the plaintiff, the Association of Classroom Teachers of Oklahoma City, Inc. (ACT), as the sole and exclusive representative for professional negotiations of the professional educators of that school district.

The facts giving rise to the dispute between the School Board and the Association of Classroom Teachers are as follows. In 1974, the Board of Education recognized ACT as the negotiating representative of the professional educators of the school district, pursuant to the provisions of 70 O.S. 1971 § 509.2, which provide in part:

"The local board of education shall recognize a professional organization that secures authorization signed by a majority of the professional educators designating said organization as their representative for negotiations. * * * "

After the recognition of ACT as the negotiating representative, ACT and the School Board entered into a "Negotiations Procedural Agreement", dated February 11, 1975. Section 1–2 of that agreement provides:

"The Association shall continue as such agent as long as the Association has authorization forms signed by the majority of the eligible professional educators of the school district. After the second Monday in September and by the third Monday of October of the school year if the Board decides there is reasonable doubt the Association represents a majority of eligible professional educators, the Board may request the Association to submit its authorization forms. Upon receipt of this request from the Board, the Association agrees to provide within 30 days the authorization forms of the Association to the Board of Education for auditing."

On or about September 6, 1975, the Board requested that ACT submit their cards for auditing, within thirty days, pursuant to the above quoted provisions. ACT tendered their authorization cards on the following day, requesting an immediate audit. Such an audit was not made until thirty days had passed. During those thirty days, another organization seeking to represent the professional educators in the school district, also submitted signed authorization cards to the Board.

At the Board meeting of November 10, 1975, the Superintendent of the Board announced that *no organization* had submitted authorization cards constituting a majority of the professional educators. In counting the cards, the Board used the following procedure. When a professional educator had signed more than one authorization card, designating different negotiating representatives, the card most recently signed was held to be valid, and all authorization cards signed in the past were held to be revoked. This procedure was followed despite the fact that the cards designating ACT as the negotiating agent provided:

"I, _____, Designate the ASSOCIATION OF CLASSROOM TEACHERS OF OKLAHOMA CITY as the sole and exclusive agent to represent me in negotiations with the Board of Education of Oklahoma City; *this designation to remain in full force and effect and be binding on all parties until I personally give written notice mailed to the ASSOCIATION OF CLASSROOM TEACHERS OF OKLAHOMA CITY that I revoke this designation and to withdraw my card from their files.*" [Emphasis added]

The record demonstrates that the above described procedure was used to invalidate a sufficient number of cards to deprive ACT of its majority status, and that if such procedure had not been followed, ACT would clearly have had the majority required for continued recognition.

In holding that ACT was entitled to recognition, the trial court ruled that on the date ACT tendered its cards to the Board, it tendered a majority of authorization cards, entitling it to continued recognition as the sole and exclusive representative of the pro-

fessional educators in the school district. In so ruling, the trial court gave no effect to the procedure used by the School Board to invalidate many ACT authorization cards.

The decisive issue raised on appeal is:

In auditing the signed authorization forms submitted under 70 O.S.1971 § 509.2, may a School Board invalidate an authorization signed by a professional educator, designating a particular organization to represent him or her, on the basis of another authorization, signed by the same professional educator, at a later date, designating a different organization as his or her representative, when the first authorization provides that it shall remain in full force and effect and be binding until the professional educator gives written notice to the professional organization originally designated, when no such notice has been given?

In signing the ACT authorization forms, the professional educators designated ACT as their sole and exclusive agent. Under the provisions of the authorization form, the educators and ACT agreed that the termination or the renunciation of their agency relationship shall not occur until notice was given to ACT. Additionally, the parties specifically agreed on the type of notification required. Such an agreement is consistent with the laws and principles of an agency, and should be given force and effect.

Comment c. to Section 119 of the Restatement of Agency (2d) provides in part:

"*Time of termination.* The revocation or renunciation is effective when the principal or agent learns that the other no longer consents to the continuance of the authority. Ordinarily, it is also effective when either party has reason to know of it, in accordance with the rule stated in Section 10, or when a notification has been given, in accordance with the rule stated in Section 11. *The parties may, however, agree that the revocation or renunciation shall not occur until there is knowledge of the withdrawal of consent, or they may specify particular acts*

*which will constitute notification.*" [Emphasis added]

A similar result was reached by the United States Court of Appeals for the Eighth Circuit in *Jas. E. Matthews & Co. v. N. L. R. B.*, 354 F.2d 432, 438 (8th Cir. 1966), in which the Court stated:

"It is also asserted that Cook 'effectively withdrew' from the Union. This is based upon Cook's testimony that after signing an authorization card on January 7th, he attended the January 10th Union meeting, and a day or two later wrote a letter to the Union requesting his card back. This letter allegedly was neither written, dated, nor addressed by Cook, but was merely left with an undisclosed individual. Thereafter, the letter was received by Union representative Harris on January 23rd, enclosed in an envelope addressed to Harris and postmarked January 22nd. In the light of the foregoing, we are unable to see how this 'letter of withdrawal' can possibly be relevant to the question of the Union's majority status on January 11th, the date the Union requested recognition, as a principal's revocation of his agent's authority is ineffective until communicated to the agent. Restatement (2d) Agency, § 119(c), 1958; *Tinley Park Dairy Co.*, 142 NLRB 683, 685–686. Cf. *N. L. R. B. v. Hunter Engineering Co.*, 215 F.2d 916, 920 (8 Cir.)."

In the case before us, several hundred cards designating ACT were invalidated, despite the fact that only two teachers had notified ACT by mail of their desire to no longer be represented by ACT. The other cards were invalidated even though no such notification was ever sent to ACT. This being the case, we hold that the Board's invalidation of those cards was improper, as under the agency agreement, the agency relationship had not yet been terminated. As the agency relationship had not been terminated, the cards designating ACT should have been considered valid, despite the fact that subsequent signed cards designating another organization, signed by the same teachers, had been submitted to the Board. The Board had the ACT forms

before it, the clear language on the form indicated how the agency relationship between ACT and the individual educator was to be terminated, and the Board was also aware that the conditions for termination had not been met. This being the case, the ACT cards should have been considered as valid.

Because the Board's invalidation of several hundred ACT cards was improper, and because ACT had a clear majority when given credit for all of its valid authorizations, ACT was entitled to recognition. Accordingly, the trial court's order requiring recognition of ACT must be affirmed.

AFFIRMED.

All Justices concur.